UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

STACEY and BRENT FULLER,            )
                                     )
        Plaintiffs,            )
                                     )
v.                                   )
                                     )
TENNESSEE VALLEY AUTHORITY,          )
STONE & WEBSTER, JAMES WEBSTER,      )     No. 1:04-CV-113
JOSHUA HOWARD, MICHAEL GOODWIN,      )
CYNTHIA GALLOWAY, WILLIAM            )     Judge Curtis L. Collier
WRIGHT, DEBRA CAPEHART, UNNAMED      )
EMPLOYEES AND MANAGERS OF            )
TENNESSEE VALLEY AUTHORITY, and      )
UNNAMED EMPLOYEES AND                )
MANAGERS OF STONE & WEBSTER,         )
                                     )
        Defendants.            )

**MEMORANDUM**

Before the Court is a motion for judgment on the pleadings or, in the alternative, motion for summary judgment filed by Defendant Stone & Webster Construction, Inc. ("Stone & Webster") (Court File No. 33). Stone & Webster has submitted a brief in support of its motion (Court File No. 33, Attch. 1), Plaintiffs Stacey and Brent Fuller ("Plaintiffs") have filed a response (Court File No. 36), Stone & Webster has filed a reply brief (Court File No. 39), and Plaintiffs have filed a brief responding to that reply (Court File No. 40). For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Stone & Webster's motion.

I.     **STANDARD OF REVIEW**

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is governed by the same standard applicable to motions to dismiss under Rule 12(b)(6). *See Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001). Accordingly, the Court must construe the complaint in the light most favorable to Plaintiffs, accept all of the complaint's factual allegations as true, and determine whether Plaintiffs undoubtedly can prove no set of facts in support of their claims that would entitle them to relief. *Id.*

If, however, the Court considers facts and evidence outside of the complaint, the Court should apply the summary judgment standard. Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issues of material fact exist, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323, 106 S.Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make an issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or

determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II. RELEVANT FACTS

Stone & Webster is a Louisiana corporation which provides supplemental maintenance and service personnel to Defendant the Tennessee Valley Authority ("TVA") pursuant to the terms of a "Contract for TVA Nuclear (TVAN) Modification and Supplemental Maintenance Services" (Court File No. 33, Attch. 2). Under the contract, Stone & Webster generally agrees "to provide the services of qualified personnel to perform modification and supplemental maintenance services and technical support . . . services at [TVA's] Browns Ferry, Sequoyah, and Watts Bar Nuclear Plants . . . when and as requested by TVA and agreed upon by [Stone & Webster]" (*id.* ¶ I-1.A). Stone & Webster additionally agrees to provide "qualified support personnel" upon request "to perform a broad range of staff augmentation functions such as general construction and field construction engineering services in accordance with criteria, procedures, and scheduling requirements

3

established by TVA" (*id.* ¶ I-1.D). "All work activities" of such support personnel are to be performed "under the direction, supervision, and control of TVA" and TVA agrees to "be solely responsible for the acts or omissions of support personnel, during the assignment of such personnel to TVA, which are within the course and scope of their employment" (*id.* ¶¶ I-1.D & I-1.D.1). The contract provides for a "qualification process" pursuant to which Stone & Webster screens, selects, and refers "support personnel" (*id.* ¶ I-1.D.6) and TVA specifically reserves "the right to reject any assigned support personnel determined not to be qualified to perform the assigned work" (*id.* ¶ I-1.D.5).

Plaintiffs are both residents of Tennessee. In March 2003, Plaintiff Stacey Fuller was hired by Numanco, LLC, a company who subcontracts with TVA to provide professional support personnel. Mrs. Fuller was assigned to work as a "health physics technician" at TVA's Sequoyah Nuclear Power Plant in Soddy Daisy, Tennessee. Plaintiffs (Mrs. Fuller and her husband, Brent Fuller) claim that sometime in mid-April 2003 James Webster, a Stone & Webster employee working at the Sequoyah Plant, assaulted Mrs. Fuller by striking her "numerous times on the head with his hard hat" (Court File No. 1, ¶ 22). Further, Plaintiffs allege that on April 24, 2003,[1] Mrs. Fuller was subjected to a hazing ritual which commenced with Michael Goodwin, her TVA supervisor, instructing her to go to the plant's ice condensing unit and obtain a "boron ice sample." As she was reaching into the ice basket, Webster and another Stone & Webster employee, Joshua Howard, grabbed Mrs. Fuller by her ankles, flipped her headfirst into the ice basket, sprayed ice on her face and body, covered the ice basket with a tarp, and trapped her inside. When the tarp was

---

[1] The complaint gives a date of "April 24, 2004" (Court File No. 1, ¶ 15), but the Court assumes this is a typographical error since the complaint itself was filed on April 15, 2004.

4

finally removed, several other individuals had gathered along with Webster and Howard to laugh at Mrs. Fuller. As a result of the incident, Plaintiffs claim Mrs. Fuller suffered severe back and spine injuries as well as other physical injuries, humiliation, embarrassment, and emotional trauma.

Plaintiffs claim there is no such thing as a "boron ice sample," but new workers are often sent to obtain such an item as part of a long-standing hazing practice employed at TVA's Sequoyah and Watts Bar Nuclear Plants. Plaintiffs contend this practice was well known throughout TVA and Stone & Webster management levels and "Ice Baby" t-shirts were given to those who had been initiated and were available for purchase at the coop store at the Sequoyah Plant Cafeteria. Plaintiffs' account of the April 24, 2003, incident is generally consistent with the findings of TVA's Office of the Inspector General ("OIG") as summarized in its Semiannual Report to Congress for the second half of fiscal year 2003 (*see* Court File No. 10, App. at 49-53).

On April 15, 2004, Plaintiffs brought the instant action against TVA, Stone & Webster, and various named and unnamed employees and managers of both entities. The complaint includes claims for assault and battery, intentional infliction of emotional distress, fraudulent misrepresentation, false imprisonment, negligence per se, negligent retention and/or hiring, negligence, and loss of consortium. The complaint specifically alleges Stone & Webster is vicariously liable for the "actions, omissions and intentional and wanton acts" of its named and unnamed employees because they were all acting within the scope of their employment (Court File No. 1, ¶¶ 73-75). Those Stone & Webster employees named specifically in the complaint are Webster, Howard, Cynthia Galloway, William Wright, and Debra Capehart. The Court previously dismissed Plaintiffs' claims against Michael Goodwin on the basis of the tort immunity afforded TVA employees acting within the scope of their employment pursuant to 16 U.S.C. § 831c-2(a)(1)

5

(Court File Nos. 31, 32) and granted summary judgment to TVA, Mrs. Fuller's statutory employer, on the basis of the exclusive remedy provision of the Tennessee Workers' Compensation Law, Tenn. Code Ann. § 50-6-108 (Court File Nos. 37, 38).

**III.    DISCUSSION**

Stone & Webster now seeks judgment on the pleadings and/or summary judgment on the basis the individuals alleged to have injured Mrs. Fuller were on loan to TVA, therefore, Stone & Webster is not vicariously liable for their negligence and/or intentional torts. Under the doctrine of respondeat superior, an employer is vicariously liable for torts committed by its employees while acting within the scope of their employment. *See Russell v. City of Memphis*, 106 S.W.3d 655, 657 (Tenn. Ct. App. 2002). In some cases, however, "[a]n employee of one employer may become the servant of another and shift the liability for his negligent acts to the second employer." *Parker v. Vanderbilt Univ.*, 767 S.W.2d 412, 416 (Tenn. Ct. App. 1989). Under the so-called loaned or borrowed servant doctrine, the second or special employer becomes solely responsible for the torts of the employee if (1) the employee has made a contract of hire, express or implied, with the special employer; (2) the work being done is essentially that of the special employer; and (3) the special employer has the right to control the details of the work. *Anderson v. Fru-Con Const. Corp.* No. 03-6507, 2004 WL 2913634, at *3 (6th Cir. Dec. 17, 2004) (unpublished opinion) (citing *Winchester v. Seay*, 409 S.W.2d 378, 381 (Tenn. 1966)).

Stone & Webster generally alleges, and Plaintiffs have not disputed, Webster, Howard, Galloway, Wright, Capehart, and the unnamed Stone & Webster employees (whoever they may be) who participated in the alleged assault on Mrs. Fuller were all loaned servants for whose actions it

cannot be held vicariously liable. It appears Stone & Webster is claiming the individuals involved in the incident were "support personnel" as described in ¶ I-1.D of the contract with TVA, the explicit provisions of the contract demonstrate those individuals were performing the work of TVA subject to TVA's direction and control, and each employee entered into an express or implied contract of hire with TVA. Although Stone & Webster's brief and proof are not entirely clear on these points, Plaintiffs have not taken issue with them and, in their sur-reply brief, actually concede Webster, Howard, Galloway, Wright, and Capehart were, in fact, loaned servants of TVA (Court File No. 40, p. 3). Accordingly, the Court will assume the loaned servant doctrine is applicable in this case. Therefore, the Court must grant Stone & Webster's motion and dismiss Plaintiffs' claims to the extent they seek to hold Stone & Webster vicariously liable for the negligence and/or intentional torts of its employees.[2]

Plaintiffs nevertheless resist Stone & Webster's motion by pointing out they have asserted a negligent hiring and/or retention claim against Stone & Webster and genuine issues of material fact remain "as to the knowledge on the part of Stone & Webster managers and supervisors of the 'ice bucket' initiation practice . . . and the previous participation in these initiation activities by the named defendants in this action" (Court File No. 36, pp. 5-6). Indeed, Plaintiffs' claims against Stone & Webster are not premised entirely upon theories of vicarious liability. In fact, the complaint

---

[2]As an alternative, Plaintiffs have requested the Court allow them additional time to conduct discovery and frame a more adequate response to Stone & Webster's motion (Court File No. 36, pp. 6-7). *See* Fed. R. Civ. P. 56(f). However, the issues of material fact which Plaintiffs claim they need additional time to explore do not relate to the loaned servant status of Webster, Howard, Galloway, Wright, and Capehart, but instead to hiring and reporting procedures and the knowledge of Stone & Webster's supervisory personnel. Thus, because Plaintiffs have not identified any discovery which would change the loaned servant analysis in this case, the Court will not delay in ruling on this issue.

7

appears to assert theories of both vicarious and direct liability with respect to each of its claims, generally alleging Stone & Webster's own management personnel "assisted in, conspired with, and coordinated the efforts of defendants Webster, Howard, Wright, and Capehart" (Court File No. 1, ¶ 40). While the loaned servant doctrine might operate to make TVA solely responsible for the negligence and/or intentional torts of Webster, Howard, Galloway, Wright, and Capehart, it certainly does not allow Stone & Webster to escape liability for *its own* tortious conduct. Thus, if Plaintiffs can demonstrate Stone & Webster was itself negligent in hiring, retaining, and/or assigning some or all of the individuals it sent to work as support personnel for TVA or somehow aided, abetted, or encouraged the alleged assault on Mrs. Fuller, the loaned servant doctrine would have no application. Whether or not Plaintiffs can support such theories of liability with evidence is a matter for trial, but since the present motion is based entirely upon the loaned servant doctrine it must be denied to the extent Plaintiffs' claims rest upon allegations other than vicarious liability.

## IV. CONCLUSION

For the reasons stated above, the Court will **GRANT IN PART** Stone & Webster's motion for judgment on the pleadings or for summary judgment (Court File No. 33) to the extent Plaintiffs' claims seek to hold Stone & Webster vicariously liable for the tortious conduct of Webster, Howard, Galloway, Wright, and/or Capehart, but will **DENY IN PART** the motion with respect to those of Plaintiffs' claims which rest on other theories of liability.

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**

**UNITED STATES DISTRICT JUDGE**